IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| RICHARD WHEELER, | § | Bankruptcy Case No. 00-33158-HDH-7 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| RICHARD WHEELER, | § | |
| | § | |
| Appellant, | § | |
| | § | Civil Action No. 3:05-CV-0028-M |
| v. | § | |
| | § | |
| ROBERT MILBANK, and DANNY WALKER, | § | |
| | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

On November 3, 2004, the Bankruptcy Court issued an Order, along with Findings of Fact and Conclusions of Law, addressing: (1) the Trustee's Motion to Obtain Turnover of Property of the Estate; and (2) Creditor Danny Walker's Objections to personal property exemptions claimed by Debtor Richard Wheeler ("Wheeler"). Wheeler appeals from the Bankruptcy Court's disposition of these matters. The Court examines the factual findings of the Bankruptcy Court under the clearly erroneous standard of review, and reviews the Bankruptcy Court's legal conclusions *de novo*. *See In re Stembridge*, 394 F.3d 383, 385 (5th Cir. 2004). For the following reasons, this Court AFFIRMS the Bankruptcy Court's Order.

### Background

Wheeler is engaged in the business of capturing, breeding, purchasing, and selling white-tailed deer. In 1995, the State of Texas issued to Wheeler a Scientific Breeder's Permit ("Permit"),

Page 1

which, among other things, gave him the legal right to retain any proceeds he derived from selling white-tailed deer. *See* TEX. PARKS & WILD. CODE § 43.357 (Vernon 2005). Wheeler has renewed his Permit annually, in accordance with TEX. PARKS & WILD. CODE § 43.355. However, pursuant to state law, Wheeler does not have title to the deer. The deer are considered wild animals, and are property of the people of the State of Texas. *See id.* at §1.011.

Wheeler filed a Petition for Chapter 11 Bankruptcy relief in December of 1999, in the San Angelo Division of the Northern District of Texas. His case was transferred to the Dallas Division in 2000, and was subsequently converted to a Chapter 7 Petition. In February of 2001, the Bankruptcy Court appointed Robert Milbank as Trustee of the bankruptcy Estate ("Trustee"). The Trustee filed a "Motion to Obtain Turnover of Property of the Estate", after learning that Wheeler possessed a number of white-tailed deer at the time of his Petition, which, like the Permit, were not disclosed in his schedule of assets.

Wheeler claims the deer are not property of the Estate, because at all times relevant to his bankruptcy Petition, he bred and sold deer in his capacity as an agent of two corporations. He alleges that between 1995 and 2002, all legal rights to the deer belonged to Double Wheel Ranch, Inc., a corporation owned by Wheeler, his family members, and a family trust. Wheeler asserts that in 2002, the rights to the deer were assigned, for no consideration, to a separate corporation, White Tails of the Double Wheel Ranch, Inc, which is owned by a family trust in which Wheeler purportedly has no personal ownership interest.

In its Order of November 3, 2004, the Bankruptcy Court granted the Trustee's Motion. The Bankruptcy Court required Wheeler to account for the deer that were in his possession on the date of his Petition, and any proceeds and offspring derived therefrom. The Bankruptcy Court's Order also sustained Walker's Objection to Wheeler's personal property exemptions.

## Analysis

*I.     The White-Tailed Deer*

Wheeler claims the Bankruptcy Court erred in holding that, on the date of his bankruptcy Petition: (1) his Permit became an asset of the bankruptcy Estate; and (2) his interest in the deer he possessed at that time, and all proceeds and offspring of those deer[1], became property of the bankruptcy Estate.

Wheeler claims that as a matter of law, the Permit cannot be property of the bankruptcy Estate, because it is regulated by the Texas Parks and Wildlife Department, which prohibits Wheeler from transferring the Permit to a third party. He claims the Permit is analogous to a professional license, such as a license to practice law or medicine. Alternatively, Wheeler argues the Permit cannot belong to the Estate because the Permit requires annual renewals. He claims the particular Permit which existed at the time of his 1999 Petition expired, by operation of law, in 2000. *See* TEX. PARKS & WILD. CODE § 43.355.[2] In adjudicating Wheeler's appeal, the Court finds it unnecessary to address Wheeler's claim that the Permit is not property of his bankruptcy Estate.

Wheeler's right to retain any proceeds he derives from Estate deer is a property right that is distinct from his property right in the Permit itself. *See generally, In re Nejberger*, 934 F.2d 1300 (3rd Cir. 1991) (finding a liquor license, and the debtor's statutory right to renew that license, to be

---

[1] The Court will use the term "Estate deer" to refer to the deer held by Wheeler on the Petition date, the offspring of those deer, and any deer that were acquired by barter of deer Wheeler held on the Petition date.

[2] Wheeler asserts a third argument in his Brief, that the Permit is property of one or both of the corporations. He alleges the Bankruptcy Court erred in finding that "the State does not issue a Permit to corporations, only to persons who are qualified to possess such a permit after application under oath." However, in the hearing before the Bankruptcy Court, Wheeler admitted that under the regulations promulgated by the Texas Parks and Wildlife Department, "only a person can have the Permit". (Transcript of October 14, 2004 Hearing, at 77). That is a judicial admission, which Wheeler cannot challenge. In the alternative, the testimony below certainly supports the Bankruptcy Court's factual conclusions and is not clearly erroneous. If the issue is a legal one, upon *de novo* review, the Court finds it to be true as a matter of law.

two distinct property rights). Wheeler has not shown the Bankruptcy Court erred in holding that his rights to the Estate deer, and their proceeds, are now property of his Estate. *See* 11 U.S.C. § 541 (Estate property includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). He has not convinced this Court, which has reviewed the extensive record below, that the following factual conclusions of the Bankruptcy Court are clearly erroneous: (1) the Permit affords rights to Wheeler in his individual capacity, rather than as an agent of the corporations; and (2) Wheeler did not effectuate a valid transfer of his interest in the Estate deer to the corporations, or any other party, as of the date of his Petition. The Bankruptcy Court's conclusion that the testimony to the contrary was not credible is not clearly erroneous.

At oral argument, the Trustee advised the Court that he does not wish to assume or otherwise utilize the Permit, except insofar as is necessary for him to sell the Estate deer to a third party, and collect any proceeds Wheeler has derived from the Estate deer since the date of his Petition. The Court finds this request analogous to cases in which a trustee seeks to collect the accounts receivable of a debtor, arising from the debtor's use of a state-issued license to engage in a regulated business, such as liquor sales or shipping. Such accounts receivable are included in a debtor's Estate. *See* 11 U.S.C. § 541(a). By the same reasoning, the Trustee has a valid turnover claim against Wheeler, as of the Petition date, for the Estate deer and their proceeds, irrespective of whether it is lawful for the Trustee, himself, to exercise rights that arise under the Permit. Even if the Permit is not property of the Estate, the Trustee may arrange a sale of the deer, and Wheeler is obligated, under 11 U.S.C. § 521(3), to exercise his rights under the Permit to cooperate with such a sale. *Id.* (the debtor must "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties").

In the alternative, however, if assumption by the Trustee of the Permit itself is necessary, the Court concludes, based on *de novo* review, that the Permit is property of the Estate. As a general

rule, a "right, privilege, or license to operate or do business, granted or issued under state or federal law", is property of a debtor's bankruptcy Estate. *In re Draughon Training Institute, Inc.*, 119 B.R. 927, 931 (Bankr. W.D. La. 1990) (finding a state-issued certification of a private school was property of the school's bankruptcy estate); *see also U.S. v. Cleveland*, 951 F. Supp. 1249, 1263 (E.D. La. 1997) ("[u]nder traditional property law, owners of licenses are generally considered to have a protective property interest"). FCC broadcast licenses, liquor licenses, gambling licenses, and licenses to operate a Nevada brothel have all been determined to be property of the Estate upon a debtor's bankruptcy. *See In re Burgess*, 234 B.R. 793 (D. Nev. 1999) (citing authorities).

The Fifth Circuit deemed an interest of the debtor not to be property of the Estate in *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983). There, the Court considered a debtor's assertion that the FAA violated the Bankruptcy Code's automatic stay by reassigning the debtor's airport landing slots to other air carriers. *See* 11 U.S.C. § 362. The Fifth Circuit held the landing slots were not "property of the Estate", because the Federal Aviation Act conferred on the FAA "unquestionable authority for all aspects of airspace management." *See Braniff*, 700 F.2d at 942. The Court found the landing slots were "restrictions on the use of property -- airplanes; not property in themselves". *Id.*, at 942.[3] Without elaborating further, *Braniff* distinguished the debtor's landing slots from cases finding other forms of state and federal licenses, such as radio broadcast licenses and shipping licenses, to be property of a debtor's bankruptcy Estate. *Id., citing LaRose v. FCC*, 494 F.2d 1145, 1149 (D.C. Cir. 1974), and *Barutha v. Prentice*, 189 F.2d 29 (7th Cir. 1951).

The Court is of the opinion that *Braniff* implicitly limits itself to a narrow set of facts which are not present here. There, the FAA, which had <u>plenary</u> powers to modify or revoke landing slots,

---

[3] In the alternative, the Fifth Circuit held that if the Estate had a property interest in the landing slots, the FAA had not violated the automatic stay because the debtor's use of the landing slots was subject to the FAA's "continuing jurisdiction and approval". *Braniff*, 700 F.2d at 942.

sought to revoke them. Here, the Texas Parks and Wildlife Code has assigned to Wheeler the state's possessory interest in the Estate deer, and an expectancy interest in profits derived from those deer. *See* TEX. PARKS & WILD. CODE § 43.357(a)(2). Unlike *Braniff*, the existence and validity of those rights is not in dispute. The State of Texas has taken no steps to revoke Wheeler's Permit, and so long as Wheeler complies with applicable regulations, the Texas Parks and Wildlife Commission does not have discretionary authority to revoke it. *See* TEX. PARKS & WILD. CODE § 43.357(b) (limiting the scope of regulations issued by the Texas Parks and Wildlife Commission). The Court finds the Permit more closely resembles liquor licenses and shipping licenses than it does the landing slots upon which *Braniff* was based. *See Barutha*, 189 F.2d at 31 (whether the rights under the motor carrier license are "called 'property' or an 'asset', or something else, we see no valid reason why such operating rights should not be considered and treated as a part of the bankrupt estate and be sold by the Trustee"); *see also In re Fugazy Exp., Inc.*, 124 B.R. 426, 430 (S.D. N.Y. 1991) (the Federal Communications Act, by conveying valuable broadcast rights to the licensee, "implicitly creates a property right in the licensee").

Wheeler's three remaining explanations for why the Permit cannot become property of his Estate are unpersuasive. Wheeler first argues the Permit cannot belong to his Estate because Texas law prohibits him from transferring the Permit to a third-party. Pursuant to 11 U.S.C. § 541(c), an interest of a debtor in property becomes property of the Estate, notwithstanding the existence of non-bankruptcy law "that restricts or conditions transfer of such interest by the debtor."

Second, Wheeler argues the Permit at issue is no longer in existence because the Texas Parks and Wildlife Code requires the Permit to be renewed annually. The Bankruptcy Court rejected this argument, implicitly finding that each renewal served as a continuation of the original 1995 Permit, rather than a replacement of the original Permit. Wheeler has not cited, and the Court has not

located, any precedent showing this conclusion to be in error. Upon *de novo* review, the Court concludes that each renewal is a continuation of the 1995 Permit. *See Nejberger*, 934 F.2d at 1303 (holding that a liquor license, which the debtor had allowed to expire before the date of his petition, was property of his Estate, because the license qualified for post-petition reinstatement).

Finally, Wheeler argues the Permit should be excluded from his Estate because it is analogous to a professional license, such as a license to practice law or medicine, which licenses are not property of a bankruptcy Estate. *See In re Lynn*, 18 B.R. 501, 503 (Bankr. D. Conn. 1982). Those licenses are excluded from the definition of "property of the Estate" because they can only be issued to persons with specialized training, and because the value of a professional license is tied to the debtor's future earnings, and Congress has explicitly excluded "earnings from services performed by an individual debtor after the commencement of the case" from Estate property. *See id.*; 11 U.S.C. § 541(a)(6). Here, in contrast, the Permit does not require specialized training, and its value is distinct from the value of Wheeler's post-petition earnings. The Permit entitles the Estate to recover proceeds attributable to Wheeler's pre-petition labor, which, as a matter of law, belongs to the Estate. *See id.*

*II.    Wheeler's Personal Property Exemptions*

Wheeler next objects to the Bankruptcy Court's Order insofar as it disallows his personal property exemption of $27,500 for "Jewelry/Fur Coat". He does not dispute that this exemption is potentially in excess of the amount permitted by applicable law. *See* TEX. PROP. CODE § 42.002 (Vernon 2005) (allowing a $15,000 exemption for jewelry). Instead, he claims that Walker does not have standing to raise an objection to his exemptions. He argues Walker waived his right to assert objections by entering into a settlement agreement with the Trustee.

The Court finds the Bankruptcy Court did not err in determining that the settlement

agreement between Walker and the Trustee does not impair Walker's rights to assert objections to Wheeler's personal property exemptions. As the Bankruptcy Court noted, Walker and the Trustee agreed to work together to pursue Walker's Objections, and to resolve their claims against Wheeler. Walker's Objections were timely asserted, were reasserted when the case was converted from Chapter 11 to Chapter 7, and have been continuously asserted throughout Wheeler's bankruptcy proceedings.

Wheeler also claims the Bankruptcy Court erred by declining to enforce an Order of the Bankruptcy Judge who previously handled the case, and who ordered the parties to mediate the valuation of Wheeler's personal property. It is axiomatic that the Court has "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). Wheeler offers no explanation as to why the Bankruptcy Court's revision of its methods for adjudicating his personal exemptions was legally improper, and the Court finds such modification to be wholly within the Court's discretion.

## Conclusion

For these reasons, the Court affirms the Bankruptcy Court's Order of November 3, 2004.

**SO ORDERED.**

**DATED:** May 19, 2005.

Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE

# CASE CLOSED

**CASE NUMBER:** 3:05-cv-0028-M

**DATE:** 05.19.05

**TRIAL: YES____   NO  X____**